[Civ. No. 774. Third Appellate District.—May 5, 1911.]

J. N. OLIVER, Administrator of Estate of J. K. OLIVER, Deceased, Appellant, v. THEKLA WARREN, Respondent.

ACTION TO SET ASIDE DEED—MENTAL INCAPACITY OF GRANTOR—FAILURE TO SUPPORT GRANTOR—FINDINGS SUSTAINED.—In an action to set aside a deed for alleged mental incapacity of the grantor, and for failure to support the grantor upon the premises during his life, as agreed, it is held that a finding upon conflicting evidence that the grantor was mentally competent when he made the deed, and a finding sustained by evidence that the grantee fully supported the defendant while he remained upon the premises, and was willing to support him thereon for life, but was prevented from doing so without her fault, through the persuasion of the relative who is now his administrator, inducing the grantor to leave said premises, sufficiently cover the controverted points, and are conclusive upon the appellate court.

ID.—CROSS-EXAMINATION OF WITNESSES TO MENTAL COMPETENCY—ABSENCE OF PREJUDICIAL ERROR.—It is held that no prejudicial error appears in the rulings of the court upon the cross-examination of witnesses as to the mental competency of the grantor.

ID.—PROPER ANSWER ON CROSS-EXAMINATION—TREATMENT OF GRANTOR UNDER CONTRACT FOR SUPPORT—DECLARATIONS OF GRANTOR.—Where a witness to the sanity of the grantor was asked on cross-examination as to the treatment of the grantor by defendant under the contract for support, he was properly allowed to answer: ''He appeared well satisfied; he said he was never treated so well in his

life as he was after he got with the Warrens," and objections of defendant to such answer as mere hearsay declarations of a deceased person were properly overruled.

ID.—TESTIMONY OF ATTORNEY WHO PREPARED DEED FROM GRANTOR TO GRANTEE—ACKNOWLEDGMENT—OBSERVATION OF SANITY—EVIDENCE NOT PRIVILEGED.—The attorney who prepared the deed from the grantor to defendant, and took his acknowledgment at its date, was competent to testify to his observation of his mental capacity at that time. Such observation does not fall within the class of communications between client and attorney disallowed under section 1881 of the Code of Civil Procedure.

ID.—EVIDENCE OF REASONABLE VALUE OF SUPPORT GIVEN NOT PREJUDICIAL.—Although, in view of other facts established, it was not important to fix a money value on the support given by defendant, yet it was not prejudicial to allow evidence thereof.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

C. M. C. Peters, and F. P. Otis, for Appellant.

Rowan Hardin, and J. B. Curtin, for Respondent.

CHIPMAN, P. J.—This is an action to set aside a certain deed made by J. K. Oliver, plaintiff's intestate, to defendant, to the surface of the Table Mountain Alpha Gravel Placer Mining Claim, designated for convenience, the Alpha Mine, and for a reconveyance of the same to plaintiff. Defendant had judgment, from which and from the order denying his motion for a new trial, plaintiff appeals.

On April 9, 1906, plaintiff's said intestate was the owner of the placer mining ground described in the complaint, and on that day executed and delivered to defendant a deed conveying to her "the surface of that certain placer mining claim [describing it] for and in consideration of the sum of $389.35 . . . and other valuable considerations." The grantor granted to the grantee "the use of the water from the tunnel upon said premises," not, however, to interfere with mining the claim, reserving to himself all the minerals in the land and the right to remove the same, with the right of ingress

and egress to and from said premises for mining purposes, and also reserving certain pasturing privileges for his stock. The deed contained the following provision: "In consideration of this conveyance, the party of the second part agrees that the party of the first part shall remain upon and occupy the cabin now occupied by him upon said premises, or a room in the dwelling-house to be constructed upon said premises by the party of the second part, and the party of the second part agrees to care for, board and suitably support and maintain the party of the first part for and during his natural life."

It is averred in the complaint that at the time this conveyance was made the grantor was very old, being about eighty years of age, was infirm in body and mentally weak, and unable to understand the nature of the deed executed by him; that defendant knew of his said weakened condition, mentally and physically; "that said defendant wholly failed and refused to suitably support and maintain said J. K. Oliver during his natural life, and that said defendant has utterly failed and refused to comply with the terms and conditions of said deed and to carry out the provisions therein made, and that defendant made said promises without any intent on her part to perform the same."

The court found against plaintiff on the issue of the alleged mental incapacity of the said J. K. Oliver at the time he executed said deed, finding that he was then mentally competent to transact said business; that defendant paid as consideration for said deed the sum named in the complaint and also the further sum of $50; that the said land embraced 76.37 acres, and that the value of the interest conveyed by said deed did not exceed $439.35, the amount of the money consideration paid therefor, and was not of greater value than $1.75 per acre; that defendant and her husband built a dwelling on said land shortly after April 9, 1906, and occupied the same and offered to the said Oliver a room therein, which he declined, preferring to remain in his cabin near by; that he continued to occupy said cabin from April 9, 1906, until January 22, 1908, during all which time "said defendant and her husband did care for, board and suitably support and maintain the said J. K. Oliver in a good and proper manner and at their own cost and expense, the reasonable value of which board

and maintenance was the sum of $20 per month from the ninth day of April, 1906, to the twenty-second day of January, 1908,'' and that during that entire period the said Oliver ''was sound of mind and well able to attend to any business whatever, and not in any weakened condition, and said J. K. Oliver was not induced by defendant to convey said property to defendant, but said J. J. Oliver entered into said contract freely and voluntarily, with a full understanding of his act in so doing and said transaction was unaccompanied by any inequitable incident; that all of the promises made by the defendant to said J. K. Oliver were made with intent on her part to fully perform the same, and defendant never did at any time or at all refuse to keep any promise or perform any promise by her made to said J. K. Oliver.'' It is then found that on January 22, 1908, ''without the knowledge, consent or connivance of the said defendant, the said J. K. Oliver, at the request of J. N. Oliver, the individual who is administrator of said estate and plaintiff herein, left the said premises . . . and did not again return to or live upon said lands and premises, and defendant was thereby prevented from caring for, boarding and suitably supporting and maintaining the said J. K. Oliver on the said premises; and said J. K. Oliver left said premises through no fault or neglect of said defendant or her husband.'' It was admitted that said J. K. Oliver died on November 9, 1908.

There were other findings, but the foregoing cover the principal controverted issues. The case does not seem to call for an analysis of the evidence. There was some conflict in the testimony as to the mental capacity of plaintiff's intestate, during the period found by the court. There was, however, sufficient evidence to support the findings, which, having been accepted by the court, is conclusive upon us.

Aside from certain rulings at the trial, appellant confines his argument to the insufficiency of the evidence to support the findings. The most that can be said upon this question is that the testimony is conflicting upon all the findings challenged, and we need go no further than to make this discovery.

Exceptions numbered in the transcript as 1, 2 and 3 relate to the same matter. Witness Fitzgerald was called by plaintiff to testify as to the mental condition of deceased in 1906 and down to January 22, 1908. On cross-examination witness was

asked if he knew about the deed to J. N. Oliver, made in January, 1908, and answered, without objection, that plaintiff told him about it. He was then asked when, with reference to the date of the deed, he told him. Other questions followed, apparently for the purpose of fixing the time of the last visit of the witness to the cabin of deceased. This was probably not within the rules governing cross-examination but the questions were harmless.

Exceptions 4, 5, 6 and 7 relate to the same matter and are of the same character.

Witness Slonicker was called by defendant and testified that he knew J. K. Oliver about the 9th of April, 1906, and afterward, and "thought he was perfectly sane at that time." He was then asked several questions as to statements made to witness concerning the treatment of Oliver by defendant and also about the contract he had with defendant. The court allowed the answers, over plaintiff's objection, noted as exceptions 8, 9, 10 and 11, on the ground that they were hearsay declarations made by a deceased. He answered: "He appeared well satisfied: he said he never was treated so well in his life as he was after he got with the Warrens." We think the ruling was correct.

Attorney F. W. Street was a witness for defendant, and testified to his having prepared the deed from Oliver to defendant and to facts occurring at the time. He also testified to Oliver's soundness of mind at that time, April 9, 1906. He was shown the deed from J. K. to J. N. Oliver, dated January 22, 1908, of which he took the acknowledgment on that day. He was then asked: "Q. Now, on that date I will ask you if John K. Oliver was mentally competent?" Counsel for defendant objected as inadmissible under subdivision 2, section 1831 of the Code of Civil Procedure. We do not think Mr. Street's observations of Oliver's mental condition at that time and his testimony as to the impressions he then received of Oliver's mental condition could be said to fall within the class of communications between client and attorney which the law will not allow to be disclosed, if the parties can be said to have sustained that relation, which we doubt. Mr. Street could testify as to his opinion of Oliver's mental condition without divulging any communications between him and his client.

Exceptions 14 and 15 arose out of objections to evidence of the reasonable value of the care and support given Oliver by defendant. One of the considerations mentioned in the deed to defendant was the support of Oliver. In view of other facts established, it was not important to fix a money value on the support given Oliver, but it was not prejudicial to allow it. Generally, it may be observed that the alleged errors, if conceded to be such, were of too little consequence to have produced any substantial prejudice.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.